## COLUMBIA GAS TRANSMISSION CORPORATION

### v.

## ALLIED CHEMICAL CORPORATION et al.

Civ. A. No. 74–2951.

United States District Court,
E. D. Louisiana.

April 26, 1979.

See also D.C., 470 F.Supp. 532.

Frank J. Peragine, Deutsch, Kerrigan & Stiles, New Orleans, La., H. L. Snyder, Charleston, W. Va., for plaintiff.

Gene W. Lafitte, and William R. Pitts, Liskow & Lewis, New Orleans, La., Ray A. Barlow, Hargrove, Guyton, Ramey & Barlow, Shreveport, La., Richard B. Wilkins, Jr., Houston, Tex., John M. McCollam, Gordon, Arata & McCollam, New Orleans, La., John V. Baus, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., Dan A. Smetherman, Landwehr & Foley, New Orleans, La., for defendants.

## MEMORANDUM AND ORDER

JACK M. GORDON, District Judge.

Before the Court at this time are the motions for summary judgment of Pennzoil Producing Company on Count I and Count II, of Mid-Continent Supply Company on Count II and Count III, and of the Moffett Group on Count II and Count III. Oral argument on these motions was heard prior to the trial of Civil Action 74–2951 on April 18, 1977. At the close of oral argument, the Court granted the motions of Pennzoil and Mid-Continent stating that it would issue written reasons at a later time. The Court took the motion of the Moffett Group under submission and after the close of Columbia Gas' case at trial, granted the Moffett Group's motion for summary judgment, stating that it would issue written reasons at a later time. These written reasons are issued in conjunction with the Court's findings of fact and conclusions of law entered

subsequent to the trial of Civil Action 74–2951. To the extent that the facts in this matter have previously been stated in the Court's findings of facts, they will not be repeated here.

## VIOLATION OF THE NATURAL GAS ACT—COUNT I

In this Court's conclusions of law, and as detailed in the "Discussion" section of its opinion, the act of Pennzoil in releasing any royalty interest and whatever reacquired operating interest in the minerals below 10,600 feet subsea in Section 84 did not constitute an act of abandonment in the meaning of the Natural Gas Act. This Court examined the nature of the releases, the intent of the defendants, and the benefit derived from such leases in reaching its conclusion. It was evident to this Court, based on the record developed prior to trial, that Pennzoil committed no abandonment of interstate services.

First, Columbia Gas had to rely on a highly technical legal theory to even bring Pennzoil's activities under the jurisdiction of the Federal Power Commission. Columbia Gas suggested that when the Moffett Group and Mid-Continent, as sublessees of Section 84, released their interests under the leasehold, the sublessor, Pennzoil, briefly reacquired its interest in the leasehold on Section 84. Since natural gas continued to flow while Pennzoil momentarily held the leasehold before releasing it to the Wylie Heirs, Pennzoil would have had dominance over the gas and was thus required to abide by the dedication into interstate service. The technical status of Pennzoil as a seller-lessee lends credence to its argument that it never intended to divert the contested gas to an intrastate market by its actions in releasing its interest in the reserves below 10,600 feet subsea to the Wylie Heirs.

It was obvious prior to trial, based on the affidavit of Will H. Meyer, District Landman for Pennzoil, that Pennzoil had a minimal involvement in any of the discussions concerning the release of the Section 84 and Section 85 leaseholds and the later re-leasing of the lower depths to Allied Chemical

Corporation. It was only after Pennzoil considered the advantages to compromising the lease cancellation suit that it agreed to sign the releases provided by the attorney for the Wylie Heirs. To the extent that Pennzoil released any services dedicated to the interstate market, it did so to receive the advantages of compromising the lease cancellation suit and benefited in no way through diversion of the gas to an intrastate market. There was no evidence in the record that Pennzoil had any knowledge of Allied Chemical Corporation's later involvement in the transactions.

Considering the record developed prior to trial, it is clear that Pennzoil's release of its leasehold interest only served as a shifting of responsibility to the Wylie Heirs to maintain the obligations to the interstate market and was not abandonment of that service. As such, Pennzoil was not required to seek FPC approval in taking the action that it did. Pennzoil committed no violation of the Natural Gas Act.

Accordingly, on the basis of the above reasons, this Court granted the motion for summary judgment by Pennzoil as to Count I in the complaint of Columbia Gas.

## INADVERTENCE CLAUSE—COUNT II AND COUNT III

In its complaint, Columbia Gas asserts that Pennzoil breached the Section 84 gas purchase contract and that the Moffett Group and Mid-Continent breached the Section 84 and Section 85 gas purchase contracts when they failed to notify the plaintiff upon the voluntary surrender of their leaseholds. This Court has jurisdiction of this state law breach of contract claim pursuant to the principles of pendent jurisdiction. The law to be applied in interpreting the contract is the law of Louisiana.

The provision in the gas purchase contracts that the above defendants are alleged to have violated reads as follows:

(3) Seller agrees that it will not voluntarily surrender or permit to lapse any lease or portion thereof or other interest committed under this agreement unless it

shall have first given Buyer [a certain number of days'] notice of its intention to surrender or permit the same to lapse and offered to assign its interest therein to Buyer [Columbia Gas] without payment of any consideration therefor except the value of any salvageable materials located thereon. . . .

All three of the defendants readily concede that they failed to give Columbia Gas the requisite notice of surrender of their leasehold or other interest, as required in the gas purchase contracts. Defendants suggest, however, that they are exonerated from any liability since they were inadvertent in failing to notify Columbia Gas. The defendants refer to that clause in the gas purchase contracts that provides a defense against liability for failing to notify the buyer of the seller's voluntary surrender of an interest in the leasehold:

. . . Notwithstanding [referring to the aforementioned clause in the contract concerning the duty to notify], however, Seller shall not be liable for any failure by reason of its inadvertence to give notice to Buyer of its intention to surrender or permit to lapse any such leasehold or other interest.

Columbia Gas contends that the inadvertence defense cannot be raised under the factual circumstances surrounding the releases of the leaseholds. First, plaintiff states that the releases of the leaseholds and other interests in Section 84 and Section 85 were not "surrenders" as contemplated by the parties to the gas purchase contracts that would activate the inadvertence clause. Second, Columbia Gas contends that the defendants' conduct did not come within the legal definition of inadvertence unless such conduct was excusable inadvertence, and not mere negligence.

As to its first contention, plaintiff suggests that the three defendants never surrendered their leasehold interests since they never intended to give up their working interests in the leasehold. Columbia Gas states that the three defendants to this day continue to own interests in the leaseholds involving those mineral reserves above 10,600 feet subsea.

This lawsuit grows out of the alleged diversion of gas reserves from the interstate to an intrastate market. Columbia Gas is basically concerned over those reserves below 10,600 feet underlying Section 84 and Section 85. The evidence in the record clearly demonstrates that these defendants intended to release all their interests in the minerals below 10,600 feet. This release was certainly in the nature of a surrender as contemplated by the parties to the gas purchase contracts.

In support of its second position that inadvertence means excusable neglect, Columbia Gas refers the Court to Federal Rule of Civil Procedure 60(b)(1), which allows a party or his legal representative relief from a final judgment upon a showing of mistake, inadvertence, surprise, or excusable neglect. Courts, in construing this rule, have held that the inadvertence must be excusable before relief will be granted. *Seward v. Nissen,* 2 F.R.D. 545 (D.C.Del.1942).

The proper analysis of the inadvertence issue does not begin by adopting a technical definition of inadvertence utilized by the courts to narrow the exceptions whereby a legal representative can obtain unique relief allowed by Federal Rule of Civil Procedure 60. Rather, this Court must attempt to determine what the parties to the contract intended when they included the inadvertence clause. In resolving ambiguities arising from particular words in a contract, Louisiana law, LSA C.C. Art. 1946 provides:

The words of a contract are to be understood, like those of a law, in a common and usual signification, without attending so much to grammatical rules, as to general and popular use.

To decide the usual and common signification of a word, it is most appropriate to first turn to a dictionary definition. In Webster's *New World Dictionary of the American Language,* College Edition, the adjectival form of the word "inadvertence" is defined as: "(1) Not attentive or observant; negligent; heedless; (2) due to oversight; unintentional." Thus, conduct is inadvertently done if done unintentionally,

though negligently. The inadvertence need not be excusable. To judicially write "excusable" into the contract would be to supply a qualifying word to a contract that the parties did not choose to add themselves.

Based on the record it appears uncontrovertible that Columbia Gas' predecessor was the author of the two gas purchase contracts at issue. United Fuel Gas Company, as predecessor, was the only party involved in both contracts. Both contracts contain substantially identical language, including the inadvertence clause. Had United Fuel Gas Company desired to modify the term "inadvertence" by requiring that such inadvertence be found excusable, it was certainly free to do so or to attempt to do so in framing the contract language. Because of the absence of the qualifying word "excusable" this Court can only assume that the author decided against requiring a showing of excusable neglect, or, after attempting to add such language, the other parties rejected such attempt. When taking judicial notice of the fact that the natural gas market at the time that the contracts were entered was a buyers' market on no uncertain terms, this Court is satisfied in concluding that Columbia Gas' predecessor merely decided not to qualify "inadvertence."

Now that the Court has resolved the definitional ambiguities, resolution of the remaining issues becomes simple. For it is clear, based on the uncontroverted facts, that none of the three defendants intentionally avoided giving notice to Columbia Gas upon the release of their interests in the leaseholds, though their failure to do so may have constituted negligence. It is clear that none of the three parties felt that they had anything to gain at Columbia Gas' expense. None have benefited from the diversion of the gas into the intrastate market. All three parties hoped to avoid judicial cancellation of the entire leasehold by agreeing to the stipulated action of releasing their interests. Such action would have appeared particularly beneficial to Columbia Gas since the three defendants were acting under the assumption that a lease cancellation would terminate the interstate dedication.

None of the representatives of any of the defendants ever read that clause in the contract containing the notification obligation. The Moffett Group admits that it had copies of both gas purchase contracts but looked at only three or four pages of each contract to determine the term of the contract, the date of termination, and the wellhead price. Never seeing the notification requirement, they consequently failed to abide by that obligation. Though their conduct in not reading the contracts in their entirety certainly was not prudent, their failure to notify because of ignorance of that obligation was definitely not intentional.

Though Mid-Continent had an operating interest in the leasehold dedicated under the gas purchase contracts, it never served as an operator, but allowed SoHyde and later the Moffett Group to carry out those responsibilities. Mid-Continent, in fact, is primarily a supplier of drilling equipment and related materials and not an active participant in the leasing and contracting arrangements of producers. Not being familiar with gas purchase contracts of this nature, and having failed to read the particular contracts, the representatives of Mid-Continent simply were unaware of their obligation to notify Columbia Gas. Such an omission certainly was unintentional and within the scope of the inadvertence clause.

Pennzoil, on the other hand, never realized that it had become a party to any of the gas purchase contracts with Columbia Gas, and for that reason never read the Section 84 contract. At the worst, Pennzoil can only be held to have been negligent for failing to recognize its technical legal status under the Section 84 gas purchase contract. Yet even had it realized its relationship as a party to that contract, its conduct in failing to read the contract could not be held intentional, but only negligent.

Accordingly, this Court has found that the failure of the three defendants to honor the notification clause of the gas purchase contracts arose from inadvertence, rather than intentional conduct. Moffett Group,

Mid-Continent Supply Company, and Pennzoil have thus been exonerated from any liability arising from their breach of the contracts based on the logical application of the inadvertence clause. The Court, in accordance with the above written reasons, thereby GRANTED the Moffett Group's motion for summary judgment as to Count II and Count III, Mid-Continent's motion as to Count II and Count III, and Pennzoil's motion as to Count I and Count II.

This Court ORDERS that the above written reasons be filed.